IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

EDWARD JAMES BREWER,           §
                              §
                              §
            Plaintiff,         §
                              §
V.                            §          No. 3:13-cv-4918-N-BN
                              §
LAVOI CORPORATION,            §
                              §
                              §
            Defendant.         §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for pretrial management pursuant to 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge David C. Godbey. The undersigned issues the following findings of fact, conclusions of law, and recommendation that the Court should grant Defendant Lavoi Corporation's Motion for Summary Judgment [Dkt. No. 44] and dismiss Plaintiff Edward James Brewer's claims in this case with prejudice.

**Background**

Plaintiff suffered a lower back injury while working as a palletizer at Defendant (d/b/a EPI Breads) on January 5, 2012. *See* Dkt. No. 45 at 26. After this injury, Plaintiff was given time off of work as well as a modified duty schedule. *See* Dkt. No. 46 at 43. On September 17, 2012, Plaintiff was released by his doctor to return to work without any restrictions. *See id*. at 81. And, after September 17, 2012, Plaintiff never requested "to be relieved of his duty to move pallets as an accommodation to any disability." *See*

*id.* at 42. On November 7, 2012, Plaintiff was terminated by Defendant after refusing to pull a pallet to a freezer. Plaintiff asserts that he was discriminated against based on his age and disability because he was directed to pull a heavy pallet to the freezer for a twenty-seven-year-old employee who was working overtime. *See* Dkt. No. 14 at 10-12.

Plaintiff has filed a complaint against Defendant asserting violations of the Age Discrimination in Employment Act ("ADEA") as well as the Americans with Disabilities Act ("ADA"). *See* Dkt. No. 3. Defendant moved for summary judgment, *see* Dkt. Nos. 44-46, and Plaintiff has responded, *see* Dkt. Nos. 48-51.[1]

## Legal Standards

Under Federal Rule of Civil Procure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). And "[a] factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

---

[1] The summary judgment motion Defendant filed on August 31, 2015 was inadvertently sent to an incorrect address for Plaintiff. *See* Dkt. No. 52. After Defendant realized the mistake, it caused a copy of the motion to be hand delivered to Plaintiff on September 29, 2015. *See id.* The Court therefore reset the deadlines established by the September 1, 2015 Order Setting Briefing Schedule [Dkt. No. 47]. *See* Dkt. No. 53. But Plaintiff failed to file a supplemental response to the summary judgment motion, Defendant did not file a supplemental reply, and the deadlines for filing a response and reply have passed. *See id.*

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

The Court is required to view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if both parties have introduced evidence showing that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment,"*Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075. Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

If, "after the nonmovant has been given an opportunity to raise a genuine factual

issue," "the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005); *Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999). The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

The verified complaint and sworn interrogatory answers of a *pro se* litigant can be considered as summary judgment evidence to the extent such pleadings comport with the requirements of Rule 56(e). *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *accord Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) ("On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit."). Here, Plaintiff's complaints are verified. *See* Dkt. No. 8, 13.

While the Local Rules in this district do not require the parties to submit statements or counter-statements of undisputed facts, where the Defendant cites a fact

that Plaintiffs do not controvert with evidence, the Court may accept it as true. *See Eversley v. MBank of Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); *Bradley v. Chevron U.S.A., Inc.*, No. 2:04-cv-92-J, 2004 WL 2847463, at *1 n.2 (N.D. Tex. Dec. 10, 2004).

## Analysis

Judicial Estoppel

Defendant's Motion for Summary Judgment should be granted because Plaintiff's claims are barred by the doctrine of judicial estoppel.

The basis for Defendant's judicial estoppel argument is that Plaintiff failed to notify this Court that he has a pending bankruptcy proceeding in the Northern District of Texas and that he failed to disclose this proceeding in the schedules that he has filed in the bankruptcy proceeding. *See* Dkt. No. 45 at 12-13; *see also In re Edward James Brewer*, No. 12-31278-SJG-13 (Bankr. N.D. Tex.). Plaintiff testified at his deposition in this case that he was aware of his claim against Defendant sometime between November 2012 and January 2013 – a claim that he estimates to be worth $5.2 million – and that, while his bankruptcy plan was confirmed in May 2012 and his bankruptcy remains pending, he has not filed amendments to his bankruptcy petition from February 2012 to at least the date that he was deposed (July 17, 2015), although he has acknowledged his duty to update the Bankruptcy Court about other pending claims and lawsuits and also has testified that he had disclosed another lawsuit in which he was a party to the Bankruptcy Court. *See* Dkt. No. 46 at 4-19.

"The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous

proceeding." *Reed v. City of Arlington*, 650 F.3d 571, 573-74 (5th Cir. 2011) (en banc) (citation omitted). The purpose of this doctrine "is to protect the integrity of the judicial process, by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." *In re Wakefield*, 293 B.R. 372, 378 (N.D. Tex. 2003) (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999); internal quotation marks and brackets omitted). And, in the bankruptcy context, "judicial estoppel must be applied in such a way as to deter dishonest debtors whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system, while protecting the rights of creditors." *Reed*, 650 F.3d at 574.

Judicial estoppel applies when "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Id.* The United States Court of Appeals for the Fifth Circuit has held that "[j]udicial estoppel is particularly appropriate where, as here, a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset." *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005).

"It goes without saying that the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims*." *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004) (quoting *In re Coastal Plains*, 179 F.3d at 207-08; emphasis in original). Further, the "obligation to disclose pending and unliquidated claims in bankruptcy

proceedings is an ongoing one." *Jethroe*, 412 F.3d at 600. "Accordingly, if a litigant fails to disclose a pending or potential claim during a bankruptcy proceedings and later attempts to pursue that claim in a court of law, then element one of the test for judicial estoppel is met." *Johnson v. Deutsche Bank Nat'l Trust Co.*, 3:12-cv-3542-L, 2013 WL 3810715, at *8 (N.D. Tex. July 23, 2013).

The first element of judicial estoppel is met here because Plaintiff testified that he did not notify either this Court of his bankruptcy proceeding or the bankruptcy court of his Equal Employment Opportunity Commission claim and pending litigation. *See* Dkt. No. 46 at 14-15. Additionally, Plaintiff's bankruptcy proceeding is ongoing, and Plaintiff continues to be represented by counsel in the bankruptcy proceeding. *See* Dkt. No. 46 at 13 & 16.

"Court have consistently held that a bankruptcy court accepts a debtor's position when it relied on her asset schedules and confirms her bankruptcy plan. This reliance need not be explicit; the court assumes reliance on the debtor's schedules when the bankruptcy court confirms the debtor's plan." *Abreu v. Zale Corp.*, No. 3:12-cv-2620-D, 2013 WL 1949845, at *3 (N.D. Tex. May 13, 2013) (citing *Jethroe*, 412 F.3d at 600). Therefore, the second element of judicial estoppel is also met here because Plaintiff's Chapter 13 bankruptcy plan was confirmed on May 18, 2012. *See* Dkt. No. 46 at 93.

"In considering judicial estoppel for bankruptcy cases, the debtor's failure to satisfy [his] statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012) (quoting *In*

-7-

*re Coastal Plains*, 179 F.3d at 210). Also, "[a] lack of awareness of a statutory disclosure duty for legal claims is not relevant." *In re Flugence*, 738 F.3d 126, 130-31 (5th Cir. 2013).

"A plaintiff has knowledge of a claim whenever she knows the facts that give rise to the claim." *Abreu*, 2013 WL 1949845, at *3 (citing *Jethroe*, 412 F.3d at 601). For example, in *Flugence*, the plaintiff filed for Chapter 13 bankruptcy protection in 2004, and the plan was confirmed later that year. *See* 738 F.3d at 128. In March 2007, the plaintiff was injured in a car accident, and she hired an attorney in April 2007. *See id.* The plaintiff's amended chapter 13 plan was confirmed in July 2007, and she sued the defendants for personal injuries from the accident in March 2008. *See id.* The plaintiff "never disclosed to the bankruptcy court, between March 2007 and July 2007 (when the amended plan was confirmed), or between July 2007 and November 2008 (when her debts were discharged), that she had been in an accident and might prosecute a personal-injury claim." 738 F.3d at 128. And there, in affirming the bankruptcy court's finding of judicial estoppel, *see id.*, the Fifth Circuit highlighted that "the law on disclosure [is] well settled: Chapter 13 debtors have a continuing obligation to disclose post-petition causes of action," *id.* at 129.

As in *Flugence*, Plaintiff's obligation to disclose post-petition causes of action is ongoing. Plaintiff knew of the facts that gave rise to his ADA and ADEA claims as soon as November 7, 2012, the date of his termination from EPI Breads. *See* Dkt. No. 46 at 6-7. But Plaintiff did not amend his bankruptcy petition to include the claims at

dispute. *See* Dkt. No. 46 at 15. As a result, Plaintiff's failure to satisfy his statutory disclosure duty is not inadvertent.

"[T]he motivation element is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court." *Love*, 677 F.3d at 262. More specifically, a debtor will be found to have the requisite "motivation to conceal where they stood to reap a windfall had they been able to recover on the undisclosed claim." *Id.* The Fifth Circuit has found that intentionality can be inferred "where the debtor [has] filed and pursued his employment discrimination claims during the pendency of his chapter 13 case but never amended his financial statement to include the lawsuit." *Jethroe*, 412 F.3d at 601. Plaintiff's actions here fulfill these requirements: He is pursuing ADA and ADEA claims against his previous employer, and his Chapter 13 bankruptcy proceeding is still ongoing. *See* Dkt. No. 46 at 16. Additionally, Plaintiff is requesting roughly $5.2 million dollars in damages, which would undoubtedly be a windfall if he were able to recover on this undisclosed claim. *See* Dkt. No. 46 at 9. As a result, the motivation element of a claim for judicial estoppel is met.

For these reasons, the undersigned recommends that the Court should grant Defendant's Motion for Summary Judgment on the ground that Plaintiff's claims are barred by the doctrine of judicial estoppel.

ADEA

The ADEA "prohibits an employer from discharging an employee on account of that employee's age." *Goudeau v. National Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015); *see also* 29 U.S.C.A. § 623(a)(1). Evidence produced for an ADEA claim is

analyzed under a burden-shifting framework. *See id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). "Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of age discrimination by showing that (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either I) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Id.* "If the plaintiff successfully makes out a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination." *Id.* If the employer meets this burden, the burden then shifts back to the plaintiff/employee to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (internal quotation marks omitted).

"'A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Holliday v. Commonwealth Brands, Inc.*, 483 F. App'x 917, 921 (5th Cir. 2012) (per curiam) (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010)). "But a reason cannot be proved to be a 'pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); emphasis in original). "The ADEA thus requires a showing of 'but-for' causation." *Goudeau,* 793 F.3d at 475.

Plaintiff cannot establish a prima facie case of age discrimination. And, accordingly, the Court should grant Defendant summary judgment on the ADEA claim.

Defendant concedes that Plaintiff can establish the first three elements of an age discrimination claim under the ADEA. *See* Dkt. No. 46 at 21. But Defendant asserts that Plaintiff does not have a prima facie claim for age discrimination under the ADEA because Plaintiff cannot establish the fourth element of the claim – that he "was either I) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *See id.*; *Goudeau,* 793 F.3d at 474.

The Court's supplemental questionnaire to Plaintiff directed him to state all facts known to him on which he relied for the age discrimination claim. In response, all that Plaintiff could assert was that his supervisor, shift supervisor, and plant manager discriminated against him based on his age by directing him to pull a heavy pallet to the freezer for a twenty-seven year old employee who was working overtime. *See* Dkt. No. 14 at 10-12. Additionally, when deposed, Plaintiff was asked "[w]hat evidence do you have, meaning based on personal knowledge as I have defined it, that when, as you say, Ricky Romero made the decision to fire you, he did so not because you were insubordinate, but instead because you were [fifty-eight] years of age?" *See* Dkt. No 46 at 41. Plaintiff responded: "Because I explained to him that I was being asked to do the work of this young [twenty-seven] year old, which was to move that, and he should do that, not me." *Id.*

Defendant also asserts that Plaintiff has not provided any evidence that he was replaced by someone outside the protected class, or by someone younger. In fact, the

Declaration of Ron Hilliard, the Production Manager at EPI Bread in Dallas, stated that, on January 6, 2013, EPI Bread hired a new palletizer who was approximately fifty-two years old and thus was also a member of the protected class. *See* Dkt. No 46 at 87; *see also* 29 U.S.C.A. § 631(a).

As a result, Plaintiff fails to establish a prima facie claim of age discrimination.

Even if Plaintiff somehow states a prima facie case, Defendant still should be granted summary judgment as Plaintiff's employment was terminated because of insubordination, not discrimination based on age. In support of this position, Defendant cites *Chaney v. New Orleans Public Facility Management, Inc.*, 179 F.3d 164 (5th Cir. 1999), in which the plaintiff was terminated for "improper behavior towards supervisor" after the plaintiff refused his supervisor's three requests to immediately tend to a repair, *id.* at 166. There, the Fifth Circuit highlighted that the plaintiff conceded that he did not comply with his supervisor's orders. *See id.* And the Court of Appeals emphasized that the company's policy and procedure manual, which the plaintiff reviewed before the incident resulting in termination arose, "warn[ed] that disrespect for a supervisor and failure to follow a direct order [were] grounds for suspension or discharge." *Id.* 166-67. The Fifth Circuit held that the defendant met its burden because "[t]he failure of a subordinate to follow the direct order of a supervisor is a legitimate nondiscriminatory reason for discharging that employee." *Id.* at 167-68. Indeed, the Court of Appeals further emphasized that, "[i]n a case in which the employer has articulated a rational justification for terminating an employee, and the

facts supporting that justification are not seriously disputed, the task of proving pretext becomes quite difficult." *Id.* at 168.

As in *Chaney*, Plaintiff was provided with an EPI Breads document that stated the work rules. *See* Dkt. No 46 at 36. The document was given to Plaintiff shortly after he was hired, and Plaintiff signed, upon receipt of the document, that he agreed to read and abide by the rules. *See id.* While Plaintiff states that he did not read the rules, Plaintiff concedes that he is "sure, yeah, [insubordination] can get you fired." *Id.* Additionally, Plaintiff responded "[y]es" when asked "[s]o common sense would say you can get fired for insubordination and EPI Breads' rules also expressly say that and you signed for those rules, right?" *Id.* Plaintiff's also signed copy of EPI Bread's Employee Conduct and Work Rules states that "[r]efusal to follow a supervisor's instructions/insubordination ... will result in this disciplinary action: DISCHARGE." *Id.* at 83. And Plaintiff concedes that he did not respond to his supervisor's orders requesting him to move the pallet and that he was "not aware of anything in the employee handbook or any policies that are [in] writing of EPI Breads that say you're allowed to decide whether or not you want to comply with a supervisory instruction." *Id.* at 38-39.

As a result, Defendant has met its burden by showing that there was a nondiscriminatory reason for Plaintiff's termination.

Defendant is also entitled to summary judgment on the ADEA claim because Plaintiff cannot show that Defendant's rationale for terminating his employment was

merely a pretext for discrimination, and, thus, that Plaintiff's age was a but-for cause of his discharge.

First, Defendant asserts that "the record is devoid of pretext evidence." Dkt. No 45 at 24. Even when viewing all facts in the light most favorable to Plaintiff, he has not provided "evidence of disparate treatment" or "that the [Defendant's] proffered explanation is false or unworthy of credence.*"Holliday*, 483 F. App'x. at 921. Plaintiff's only rationale for disobeying his supervisors requests is that he "felt someone else should do the movement of [the pallet]," especially because the employee who Plaintiff was asked to pull the pallet for was twenty-seven years old and Plaintiff believed "he need[ed] to do his job." Dkt. No. 46 at 30, 33. The supervisor's request is not evidence of disparate treatment because even Plaintiff conceded, when asked, that "moving a shrink-wrapped pallet to the freezer was something [Plaintiff] had done thousands of times before." *Id.* at 30.

Second, Defendant asserts that "there is a strong *presumption* that age discriminatory animus could *not* be implicated as the reason for Plaintiff's termination" because Plaintiff was fifty-seven years old when he was hired by EPI Breads and thus was already a member of the protected class. Dkt. No. 45 at 24; *see also* 29 U.S.C.A. § 631(a). In support of this presumption, Defendant cites *Brown v. CSC Logic, Inc.*, 82 F.3d 651 (5th Cir. 1996), *abrogated on other grounds by Fitzpatrick v. Pontotoc County, Miss.*, 612 F. App'x 770 n.5 (5th Cir. 2015)). In *Brown*, the Court of Appeals applied the "same actor" inference because the plaintiff was over the age of forty when he was hired and the CEO who both hired and terminated the plaintiff's employment was also

over the age of forty at the time the plaintiff was hired. *See* 82 F.3d at 654, 658. The Fifth Circuit further explained that "[t]his situation gives rise to an inference that age discrimination was not the motive behind [the plaintiff's] termination." *Id*. at 658.

While, in *Brown*, the Court of Appeals explained that, "[b]y expressing our approval of this inference, we do not rule out the possibility that an individual could prove a case of discrimination in a similar situation," *id*. at 658, this Court should apply the "same actor" inference in light of this case's similar fact pattern. As in *Brown*, Plaintiff was fifty-seven years old at the time he was hired to be a palletizer by Defendant and thus a member of the protected class. *See* Dkt. No. 46 at 21. Additionally, Plaintiff responded in the affirmative when asked if he recalled that the person who hired him was older than him. *See id*. Similar to *Brown*, the two supervisors who made the decision to terminate Plaintiff's employment were fifty-five and fifty-eight years old at the time of Plaintiff's release, and Plaintiff testified that he was about fifty-eight years old at the time of termination. *See id*. at 39, 87.

As a result, Plaintiff has failed to provide any evidence that his age was a but-for cause of his employment termination, and thus Defendant's Motion for Summary Judgment for the ADEA claim should be granted.

Disability Discrimination Claim (ADA)

Defendant's Motion for Summary Judgment should be granted because Plaintiff's ADA claim fails as a matter of law.

"The ADA prohibits an employer from discriminating against a 'qualified individual with a disability on the bases of that disability.'" *EEOC v. LHC Group, Inc.*,

-15-

773 F.3d 688, 694 (5th Cir. 2015); *see also* 42 U.S.C. § 12112(a). "In a discriminatory-termination action under the ADA, the employee may either present direct evidence that she was discriminated against because of her disability or alternatively proceed under" the *McDonnell Douglas* burden-shifting analysis. *Id.* (internal quotation marks omitted). Under *McDonnell Douglas*, the employee must first establish a prima facie case of discrimination. *See id.* If the employee meets this burden, the burden then shifts to the employer to "articulate a legitimate, nondiscriminatory reason for terminating the employee." *Id.* And, if the employer meets its burden, the burden again shifts back to the employee to show that the employer's purported reason is pretextual. *See id.* "In the Rule 56 context, a prima facie case of discrimination plus a showing that the proffered reason is pretextual is typically enough to survive summary judgment." *Id.*

Plaintiff cannot make a prima facie showing of ADA discrimination.

There is "a discrepancy in the Fifth Circuit's cases evaluating the requisite nexus between an employee's disability and her termination." *LHC Group*, 773 F.3d at 695. In *LHC Group*, the Fifth Circuit held that, "'[t]o establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability.'" *Id.* at 697 (quoting *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)). *But see, e.g.*, *McCollum v. Puckett Mach. Co.*, ___ F. App'x ____, No.15-60166, 2015 WL 5817650, at *3 (5th Cir. Oct. 6, 2015) (per curiam) (holding that a plaintiff must show: "(1) He is disabled, (2)

he is qualified for his job, (3) he was subject to an adverse employment action on account of his disability and (4) he was replaced by or treated less favorably than non-disabled employees.").

Despite these variations, Defendant's Motion for Summary Judgment should be granted as to Plaintiff's ADA claim for two reasons. Plaintiff has not shown that he is disabled, and Plaintiff has not shown that he was terminated because of his alleged disability or the perception of his disability.

Defendant asserts that Plaintiff cannot satisfy the first element because "Plaintiff did not suffer from an ADA disability." Dkt. No. 45 at 26.

The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). In *Rogers v. International Marine Terminals, Inc.*, 87 F.3d 755 (5th Cir. 1996), the Court of Appeals held that the plaintiff's ankle injury did not constitute a disability. The Fifth Circuit emphasized that, before the plaintiff's surgery, the plaintiff was capable of working without any limitation and that a "therapist concluded that [the plaintiff had] the current functional capacity for heavy work and [had] the ability to perform without any restriction his previous duties." *Id.* at 759.

Defendant recognizes that, on or about January 5, 2012, Plaintiff suffered a lower back injury while working. *See* Dkt. No. 45 at 26. During his deposition, Plaintiff testified that, following his back injury, he was given time off and was also given modified or light duty work upon returning to EPI Breads. *See* Dkt. No. 46 at 22-23.

-17-

And Plaintiff conceded that he did not know of anyone at EPI Breads who had a problem with his light duty and modified work. *See id*. Also, Plaintiff explained that EPI Breads provided him with a $1,000 interest free loan to help him with expenses. *See id*. at 23-24. As in *Rogers*, on September 17, 2012, Plaintiff was released to return to work without restrictions. *See id*. at 81; *see also* 87 F.3d at 759. And again, at a second check-up just over a month later, Plaintiff was given permission to work without restrictions. *See* Dkt. No. 46 at 88. Plaintiff also testified that, after his unrestricted release on September 17, 2012, he never requested "to be relieved of [his] duty to move pallets as an accommodation to any disability." *Id*. at 42. As a result, Plaintiff did not suffer from an ADA disability from September 17, 2012 through the date of his termination.

Alternatively, Defendant correctly asserts that "Plaintiff cannot show that he was 'regarded as' having a disability." *See* Dkt. No. 45 at 26.

> An individual meets the requirement of being regarded as having such an impairment if the individual establishes that he or she has been subjected to an action prohibited under this chapter [Equal Opportunity for Individuals with Disabilities] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

*Flanner v. Chase Inv. Servs. Corp.*, 600 F. App'x 914, 922 (5th Cir. 2012) (per curiam).

In *Flanner*, the plaintiff argued that "it may be implied that [his employer] perceived him as disabled because [his employer] was aware of his heart surgery." *Id*. In response, the defendant highlighted "district court opinions rejecting a plaintiff's subjective belief and conclusory allegations as establishing a prima facie case of having

been regarding as disabled." *Id*. Additionally, the defendant emphasized that the plaintiff "testified at his deposition that he was able to do the same work at the same production level after returning from leave." *Id*. As a result, the Fifth Circuit held that the plaintiff "failed to make a prima facie case for an ADA violation because he points to no evidence indicating [the defendant] perceived him as disabled." *Id*.

As in *Flanner*, Plaintiff points to no evidence indicating that Defendant regards him as disabled. Because this Court cannot rely on Plaintiff's conclusory allegations and also because Plaintiff testified in his deposition that he never requested "to be relieved of [his] duty to move pallets as an accommodation to any disability" after his unrestricted release on September 17, 2012, Plaintiff has failed to show that he was regarded as disabled. Dkt. No. 46 at 42.

Plaintiff also has not shown that he was subject to an adverse employment action on account of his disability. In his deposition, Plaintiff testified that no one at EPI breads ever said they were mad at Plaintiff because of his back injury. *See* Dkt. No. 46 at 43. Additionally, Plaintiff answered in the affirmative when asked "would you agree with me that you were treated fairly and appropriately in connection with our back injury by being given time off from work, your job was held open for you to return to, you were retrained because there had been changes in some of the technology when you came back, and you were given a modified duty schedule, all of these things being to assist you to get back to work, right?" *Id*. And Plaintiff testified that, after his unrestricted release on September 17, 2012, he never requested "to be relieved of duty to move pallets as an accommodation to any disability." *Id*. at 42. As

a result, Plaintiff has not provided any evidence of a nexus between his alleged disability and termination from employment.

Next, as discussed above in the context of the ADEA, as to the ADA claim, Plaintiff was terminated for insubordination, not for his alleged disability.

Finally, summary judgment is also appropriate as to the ADA claim because Plaintiff cannot show that Defendant's rationale for employment termination was merely a pretext for discrimination. If the employer "articulate[s] a legitimate, nondiscriminatory reason for terminating the employee, the burden again shifts back to the employee to show that the employer's purported reason is pretextual". *LHC Group*, 773 F.3d at 694. In order to meet his burden, "[t]he plaintiff must offer substantial evidence of pretext amounting to more than her subjective belief of discrimination." *Pope v. Boise Cascade Corp.*, 72 F. App'x 52, 53 (5th Cir. 2003) (per curiam) (citing *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402-03 (5th Cir. 2001)).

In response to the Court's supplemental questionnaire, Plaintiff alleged that he suffered a lower back injury, that Defendant knew of this injury prior to Plaintiff's termination, and that Defendant refused to make reasonable accommodations after Plaintiff's job related injury. *See* Dkt. No. 14 at 2-3. The only evidence that Plaintiff provided was a letter from the Social Security Administration, and Plaintiff asserted that the letter proved beyond a reasonable doubt that Plaintiff has an injury that occurred on January 5, 2012 on Defendant's property. *See* Dkt. No. 50 at 2.

Defendant continues to highlight that Plaintiff testified that he never requested to be relieved of his obligation to move the pallets as an accommodation to his alleged disability after his unrestricted release on September 17, 2012. *See* Dkt. No 45 at 29; Dkt. No. 46 at 42. Because Plaintiff has not met his burden to show that Defendant's rationale for his termination is pretextual, Defendant's Motion for Summary Judgment should be granted.

## Recommendation

The Court should grant Defendant's Motion for Summary Judgment [Dkt. No. 44] in full and dismiss Plaintiff Edward James Brewer's claims in this case with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    DATED: January 22, 2016

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE